## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DANIEL A. REED and )
AMBER REED, )
          )
       Plaintiffs, )
          )
      v. )   Civil No. 3:20-35
          )   Judge Stephanie L. Haines
ALEX MARK SOSSONG, M.D., and )
DUBOIS REGIONAL MEDICAL )
CENTER, )
          )
       Defendants. )

### OPINION and ORDER OF COURT

This is a medical malpractice case brought by Daniel A. Reed and Amber Reed, asserting claims for negligence and loss of consortium, against Dr. Alex Mark Sossong and Dubois Regional Medical Center.[1]  Presently before the Court is Defendants' joint motion for partial summary judgment [Doc. 42], Plaintiffs' response in opposition [Doc. 45], and Defendants' reply [Doc. 54]. The Court heard oral argument on the motion on December 9, 2021, and the matter was taken under advisement.   For the following reasons, Defendants' motion for partial summary judgment will be **granted**.

## I.      Introduction

### A.      Background

On July 15, 2018, Plaintiff Daniel Reed slipped and fell while on a canoeing trip, injuring his lower right leg. He presented to Dubois Regional Medical Center, where he was examined by Physician's Assistant Cierra Turner, who diagnosed him as suffering an abrasion and non-displaced hairline fracture of the right tibia.  The wound was cleaned and a dressing was applied,

---

[1] A third defendant, Cierra D. Turner, P.A., was dismissed from this action upon stipulation of the parties [Doc. 81-1]and Order of court [Doc. 82].

but no antibiotics were administered or prescribed.  Reed was placed in a splint, given crutches and instructed to apply ice, keep the leg elevated and remain non-weight bearing.  Turner also advised him to follow-up with an orthopedist.  Alex Mark Sossong, M.D., reviewed the x-ray, consulted with Turner, and approved her care plan.  Reed was discharged on July 15, 2018.

On July 17, 2018, Reed presented to the emergency room at Bayhealth Kent General Hospital in Delaware with increased pain and swelling in his right lower leg.  He was diagnosed with severe sepsis, and was started on antibiotics.  His condition continued to worsen and he was transferred to the Hospital of the University of Pennsylvania on July 18, 2018.  Medical records from the Hospital of the University of Pennsylvania revealed a positive blood evaluation for hairy cell leukemia.  Despite aggressive treatment and surgical procedures at the Hospital of the University of Pennsylvania and Presbyterian Hospital, Reed required an above-the-knee amputation of his right leg on August 8, 2018.

**B.      Procedural History**

Plaintiffs filed a two-count complaint on February 26, 2020 [Doc. 1].  At Count One, Daniel Reed alleges negligence against Dr. Sossong and Dubois Regional Medical Center resulting in the loss of his lower right leg.  At Count Two, Amber Reed alleges loss of consortium.  Dubois Regional Medical Center filed an answer on June 1, 2020 [Doc. 11].  Defendant Sossong filed an answer on June 11, 2020 [Doc. 13].  Both Defendants assert that their treatment of Daniel Reed was appropriate and within the applicable standard of care, and further contend that Daniel Reed's infection and subsequent amputation was the result of being immunocompromised due to hairy cell leukemia.  A jury trial is currently set to commence on April 25, 2022.

On September 30, 2021, Defendants filed a joint motion for partial summary judgment [Doc. 42] seeking to preclude Plaintiffs from recovering damages for past medical expenses in

connection with a lien for medical bills paid by a private insurer.  Plaintiffs filed a response in opposition to the motion on October 12, 2021 [Doc. 45], and Defendants filed a reply on November 11, 2021 [Doc. 54].  Oral argument on the motion was held on December 9, 2021, and the matter was taken under advisement.

## II.    Standard

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  "A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof."  *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citing *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

Rule 56(c) "'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  *Marten v. Godwin*, 499 F.3d 290, 295 (3d Cir. 2007) (quoting *Celotex*, 477 U.S. at 322-23).  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by either citing to particular parts of materials in the record or by showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c).

Once the moving party satisfies its burden under Rule 56(c) that no genuine issue of material fact exists, the burden shifts to the nonmoving party, who must go beyond his or her pleadings and designate specific facts by the use of affidavits, depositions, admissions or answers

to interrogatories showing that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. The nonmoving party cannot defeat a well-supported motion for summary judgment by simply reasserting unsupported factual allegations contained in his or her pleadings. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989). However, in deciding a Rule 56 summary judgment motion, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences and resolve all doubts in its favor. *Woodside v. Sch. Dist. of Phila. Bd. of Educ.*, 248 F.3d 129, 130 (3d Cir. 2001). Finally, the court must not engage in credibility determinations at the summary judgment stage. *Simpson v. Kay Jewelers, Div. of Sterling, Inc.,* 142 F.3d 639, 643 n.3 (3d Cir. 1998).

## III.    Analysis

In ¶ 32 of the complaint, Plaintiffs assert that as a direct and proximate result of the Defendants' conduct, Daniel Reed "was forced to expend large sums of monies for doctors, hospitals, and other items necessary for proper care and treatment" [Doc. 1]; *see also* [Doc. 43-2 Ex. A p. 3]. Defendants move for partial summary judgment to preclude Plaintiffs from recovering damages in the form of a recoverable lien for past medical expenses paid by a private insurer, Highmark Delaware. Defendants contend that Plaintiffs have failed to show that the plan in question was a self-funded plan under the Employee Retirement Income Security Act (ERISA), which would exempt the plan from the requirements of the Pennsylvania Medical Care Availability and Reduction of Error Act ("MCARE"). Instead, Defendants argue that because the plan was insured, the provisions of the MCARE Act apply, precluding as a matter of law the recovery of damages for past medical expenses to the extent those expenses were covered by the insurer.

In response, Plaintiffs argue that the plan in question is an HMO, which is exempt from the provisions of the MCARE Act. Alternatively, Plaintiffs argue that they qualify for one of the

statutory enumerated exceptions set forth in the MCARE Act because there is "some evidence" that the plan in question "may be covered by ERISA."

Upon careful consideration of the parties' papers, the argument by both sides at oral argument, and a review of the relevant statutes and case law, the Court finds that the MCARE Act does apply in this case, that it is not preempted by ERISA, and that none of the statutory exceptions apply. Accordingly, Defendants are entitled to summary judgment as a matter of law on the issue raised in their motion.

### A.     The MCARE Act

Under Pennsylvania law, a plaintiff generally is entitled to recover damages for past medical expenses reasonably and necessarily incurred, as well as all future medical expenses reasonably likely to be incurred. *Moorhead v. Crozer Chester Medical Center*, 765 A.2d 786, 789 (Pa. 2001), *abrogated on other grounds by Northbrook Life Insurance Co. v. Commonwealth*, 949 A.2d 333 (Pa. 2008); *see also McDonald v. United States*, 555 F. Supp. 935, 962 (M.D. Pa. 1983). Moreover, Pennsylvania follows the common-law collateral source rule, which holds that "payments from a collateral source shall not diminish the damages otherwise recoverable from the wrongdoer." *Johnson v. Beane*, 664 A.2d 96, 100 (Pa. 1995).

However, in certain specific types of cases the collateral source rule has been abrogated by statute, such as the Medical Care Availability and Reduction of Error Act ("MCARE"), 40 Pa. Stat. Ann. § 1303.508, which has "negated the substantive collateral source doctrine in medical professional liability actions." *Gallagher v. Pa. Liquor Control Bd.*, 883 A.2d 550, 554 n. 3 (Pa. 2005). The MCARE Act explicitly provides, with certain enumerated exceptions, that:

> Except as set forth in subsection (d), a claimant in a medical professional liability action is precluded from recovering damages for past medical expenses or past lost

earnings incurred to the time of trial to the extent that the loss is covered by a private
or public benefit or gratuity that the claimant has received prior to trial.

40 Pa. Stat. Ann. § 1303.508(a).

In addition, the MCARE Act further provides that, subject to the same enumerated
exceptions, "there shall be no right to subrogation or reimbursement from a claimant's tort
recovery with respect to private or public benefits covered in subsection (a)."  40 Pa. Stat. Ann. §
1303.508(c).

### B.     ERISA

The Federal Employee Retirement Income Security Program ("ERISA") applies to "any
employee benefit plan if it is established or maintained – by any employer engaged in commerce
or in any industry or activity affecting interstate commerce . . . ." 29 U.S.C. § 1003(a).  In addition,
ERISA commands that its provisions "shall supersede any and all State laws insofar as they may .
. . relate to any employee benefit plan."  29 U.S.C. § 1144(a).  However, it further provides that
nothing in the Act "shall be construed to exempt or relieve any person from any law or any State
which regulates insurance, banking or securities."  29 U.S.C.  §  1144 (b)(2)(A).  In addition,
ERISA contains a "deemer clause" which instructs that an employee benefit plan "shall [not] be
deemed to be an insurance company . . . or to be engaged in the business of insurance … for
purposes of any law of any State purporting to regulate insurance companies . . . ."  29 U.S.C. §
1144(b)(2)(B).

Thus, ERISA generally supersedes any State law relating to employee benefit plans, *except*
State laws regulating insurance, banking or securities.   Moreover, an "employee benefit plan" is
not to be deemed an insurance company for purposes of any State law which purports to regulate
insurance.

C.      **Preemption**

The issue in this case then, is whether the Pennsylvania MCARE Act, which precludes the recovery by a claimant of past medical expenses covered by a private insurer, and further provides no right of subrogation or reimbursement from a tort recovery to that insurer, is preempted by ERISA.  If so, Plaintiffs are exempt from the application of the MCARE's collateral source and anti-subrogation provisions, and may seek and recover damages for past medical expenses covered by the insurer and received prior to trial.  If not, then the MCARE Act applies, and Plaintiffs may not recover past medical expenses that were covered by the private insurer, and the insurer likewise has no subrogation right to any tort recovery with respect to the covered benefits.

The answer to this question hinges on the applicability of ERISA's so-called "deemer clause," 29 U.S.C. § 1144(b)(2)(B), and can be determined by the decision of the United States Supreme Court in *FMC Corp. v. Holliday*, 498 U.S. 52 (1990).  There, the Supreme Court decided that the "deemer clause" exempts *self-funded plans* under ERISA from state laws that "regulate insurance" within the meaning of the savings clause, and thus found that self-funded ERISA plans are exempt from state regulation insofar as that regulation relates to the plans.  Accordingly, the Court held that ERISA preempted application of the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), which precludes reimbursement from a claimant's tort recovery for benefit payments made by a "program, group contract or other arrangement," to an employer's self-funded health care plan because, although the State law related to the plan, the plan could not be deemed an insurer.  *FMC*, 498 U.S. at 61.  Conversely, plans that are insured are subject to indirect state insurance regulation, insofar as state laws "purporting to regulate insurance" apply to the plans' insurers and to the insurers' insurance contracts.  *Id.*

The Supreme Court's analysis in *FMC* controls this Court's analysis of the applicability of the deemer clause to the MCARE Act.   Like the MVFRL, the MCARE Act directly controls the terms of insurance contracts by invalidating any subrogation provisions that they contain.  40 Pa. Stat. Ann. § 1303.508(c).   Thus, like the MVFRL's anti-subrogation provision, the MCARE Act also "does not merely have an impact on the insurance industry; it is aimed at it." *FMC*, 498 U.S. at 61.  Accordingly, state law is not pre-empted, and the matter of subrogation returns to that state law, unless the statute is excluded from the ERISA savings clause by virtue of the ERISA deemer clause.

In *FMC*, the Supreme Court expressly determined that *only* self-funded ERISA plans are exempt from state laws that regulate insurance pursuant to the deemer clause.  498 U.S. at 64 ("Our interpretation of the deemer clause makes clear that if a plan is insured, a State may regulate it indirectly through regulation of its insurer and its insurer's insurance contracts; if the plan is uninsured, the State may not regulate it.); *see also Summerlin v. Georgia-Pacific Corp. Life, Health & Accident Plan, et al.*, 366 F.Supp.2d 1203 (M.D. Ga. 2005) (Georgia anti-subrogation statute preempted by ERISA because plan at issue was *self-funded* plan).  Employee benefit plans that are insured, however, are subject to indirect state insurance regulation and are bound by state laws regulating insurance, such as anti-subrogation provisions.  *See Wurtz v. Rawlings Co. LLC*, 761 F.2d 232 (2d Cir. 2014) (New York statute limiting reimbursement and subrogation fell within ERISA's savings clause, as it regulated insurance for purposes of participation in *insured* ERISA-governed health benefits plans, and therefore is not preempted).

The Supreme Court in *FMC* defined a self-funded employee benefit plan as one where an employer "does not purchase an insurance policy from any insurance company in order to satisfy its obligations to its participants."  498 U.S. at 54.  Here, as Defendants aptly note, Plaintiffs have

8

produced no evidence suggesting that the plan at issue in this case is an ERISA qualified, self-funded plan.  To the contrary, the evidence indicates that Plaintiff's employer purchased a fully-insured policy from Highmark Delaware, a private insurance company [Docs. 43-15 and 43-16]. Because the benefit plan that covered Plaintiff's past medical expenses is insured, it is subject to, and bound by, state laws regulating insurance, including the MCARE Act.  Thus, under the MCARE Act, Plaintiffs are precluded as a matter of law from recovering damages for past medical expenses covered by their insurer and received prior to trial, unless the plan otherwise is exempt from MCARE, or an enumerated exception applies.

### D.      Exemptions and Exceptions

Plaintiffs essentially raise two arguments in an effort to avoid the clear applicability of the MCARE Act's collateral source and anti-subrogation provisions to this case.  First, they argue that the plan at issue should be exempt from the MCARE Act because it is a health maintenance organization ("HMO"), and the Act does not apply to HMO's.  Second, they argue that there may be "some" evidence that the plan in question "may be covered by ERISA," and, therefore, may fall within one of the MCARE Act's enumerated exceptions.    Neither argument is persuasive.

As to the first argument, Plaintiff relies on *Wirth v. Aetna U.S. Healthcare*, 588 Pa. 313 (2006).  In that case, the Pennsylvania Supreme Court held that a Health Maintenance Organization is exempt from complying with the anti-subrogation provision of the Pennsylvania MVFRL.  In so holding, the Court determined that HMO's are exempt from compliance under the express provisions of the Pennsylvania HMO Act, which explicitly commands that  HMO's are not subject to any insurance law "unless such law specifically and in exact terms applies to health maintenance organizations." *Wirth*, 588 Pa. at 323.   The Court determined that because the term "program, group contract or other arrangement" as used in the MVFRL did not "specifically and in exact

terms" apply to HMO's, HMO's are exempt from complying with the anti-subrogation provision of the MVFRL.  *Id.* at 323-24.

Here, Plaintiffs' have failed to present evidence that the plan at issue is an HMO which is covered by the Pennsylvania HMO Act, and therefore may be exempt from the relevant provisions of the MCARE Act.  Rather, the summary judgment record before the Court establishes that the Highmark Delaware plan at issue is an Exclusive Provider Organization ("EPO") plan [Doc. 43-2, 43-3, 43-4, 43-5].  As Plaintiff has failed to produce any evidence that the employee benefit plan in question is an HMO, it is not exempted from the MCARE Act under the Pennsylvania HMO Act.

Nor has Plaintiff shown that one of the enumerated exceptions to the MCARE Act applies. The MCARE Act provides that the collateral source provision, precluding the recovery of damage for past medical expenses covered by a private or public benefit or gratuity the claimant has received prior to trial, and the anti-subrogation provision do not apply to the following exceptions:

> (1) Life insurance, pension or profit-sharing plans or other deferred compensation plans, including agreements pertaining to the purchase or sale of a business; (2) Social Security benefits; (3) Cash or medical assistance benefits which are subject to repayment to the Department of Public Welfare; (4) Public benefits paid or payable under a program which under Federal statute provides for right of reimbursement which supersedes State law for the amount of benefits paid from a verdict or settlement.

40 Pa. Stat. Ann. § 1303.508(d).

Here, the first three exceptions clearly do not apply.  Plaintiff argues, however, that exception four may apply because there is some evidence that the plan may be covered by ERISA, and therefore benefits paid pursuant to that plan may fall "under [a] Federal statute [that] provides for a right of reimbursement which supersedes State law."

Plaintiff's argument fails for two reasons. First, unlike the collateral source provision set forth in subsection (a), which refers specifically to loss covered by "a private or public" benefit, the fourth exception refers only to public benefits paid. *See, e.g.*, *Cleaver v. United States, et al.*, Civ. Action No. 08-425, 2012 WL 912729 (W.D.Pa. March 15, 2012) (right to reimbursement for Medicare payments supersedes state law for the amount of benefits paid, and Plaintiff therefore may recover for damages for past medical expenses paid by Medicare). Here, the benefits were paid by Highmark Delaware, which is a private, not public, company.

Secondly, as already discussed, even assuming arguendo that the benefits paid by Highmark Delaware could be deemed "public" and paid "under ERISA," as already discussed, ERISA does not supersede State law because the plan at issue is not an ERISA qualified self-funded plan. Instead, it is an insured plan, which may be regulated by the State indirectly through regulation of its insurer and the insurer's insurance contracts. Accordingly, the Court finds that the exception to the collateral source and anti-subrogation provisions of the MCARE Act set forth in § 1303.508(d)(4) for "Public benefits paid or payable under a program which under Federal statute provides for right of reimbursement which supersedes State law" does not apply in this case.

## IV.   Conclusion

Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case. *Marten*, 499 F.3d at 295; *see K.H. ex rel. H.S. v. Kumar*, 122 A.3d 1080, 1093 (Pa. Super. 2015) ("[T]o prevail in a medical malpractice action, a plaintiff must establish a duty owed by the physician to the patient, a breach of that duty by the physician, that the breach was the proximate cause of the harm suffered, and [that] the damages suffered were a direct result of the harm"). An issue of

material fact is in genuine dispute if the evidence is such that a reasonable jury could decide it in favor of the nonmoving party. *Anderson*, 477 U.S. at 248.

Here, Pennsylvania law precludes a claimant from recovering damages for past medical expenses incurred to the time of trial to the extent that the loss is covered by a benefit that the claimant has received prior to trial, unless the statute is preempted by ERISA, or unless the claimant can show that the plan otherwise is exempt from the MCARE Act, or one of the four statutory exceptions applies.

Here, Plaintiffs have produced no evidence that the plan at issue was a self-funded health care plan exempt from the collateral source and anti-subrogation provisions of the MCARE Act under the ERISA deemer clause. Nor has Plaintiff shown that the plan is an HMO, which might render it exempt from the MCARE Act under the Pennsylvania HMO Act. Finally, Plaintiffs have failed to show that any of the exceptions to the collateral source and anti-subrogation provisions enumerated in the MCARE Act apply.

Accordingly, because Plaintiffs are precluded as a matter of law from recovering damages related to past medical expenses paid by a private insurer prior to trial under the MCARE Act, Defendants are entitled to partial summary judgment on this issue.

An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DANIEL A. REED and | ) | |
| AMBER REED, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil No. 3:20-35 |
| | ) | Judge Stephanie L. Haines |
| ALEX MARK SOSSONG, M.D., and | ) | |
| DUBOIS REGIONAL MEDICAL | ) | |
| CENTER, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER OF COURT

AND NOW, this 8th day of April, 2022, upon due consideration of Defendants' joint motion for partial summary judgment [Doc. 42], Plaintiffs' response in opposition [Doc. 45], and Defendants' reply [Doc. 54], and, for the reasons set forth in the accompanying Opinion, accordingly,

IT IS ORDERED that Defendants' joint motion for partial summary judgment [Doc. 42] hereby is **granted**.

Stephanie L. Haines
United States District Judge

cc/ecf: All counsel of record